UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANIEL E. MURPHY,

        Plaintiff,

v.

GROWER SERVICE CORP.
d/b/a UAP GREAT LAKES, a wholly
owned subsidiary of UNITED
AGRI PRODUCTS,

        Defendants.
_____/

CASE NO. 05-74504

HON. MARIANNE O. BATTANI


**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS**

    Before the Court is Defendants UAP Great Lakes (UAP) and United Agri Products' (Agri) Motion to Dismiss (Doc. # 13). The Court heard oral argument on the motion on July 6, 2006. At the conclusion of the hearing, the Court took the motion under advisement. For the reasons that follow, the Court **GRANTS** Defendants' Motion to Dismiss.

**I. STATEMENT OF FACTS**

    Plaintiff was an employee of UAP and/or its subsidiaries from approximately April, 1982, until August 30, 2004, when he was terminated by UAP. In January 2000, Plaintiff, while working for UAP, reported to Senior Management of ConAgra, Inc. (the then parent company of UAP) that fraud was being perpetrated by officers and employees of UAP with

regard to financial and earning reports.[1]  This activity was reported to the Securities and Exchange Commission ("SEC"), and an investigation ensued.  ConAgra confirmed the fraudulent activities via numerous press releases issued throughout 2001.

In November, 2003, ConAgra sold UAP resulting in the corporate structure referred to collectively as Defendants.  The management of ConAgra promised Plaintiff confidentiality as to his "whistleblower" status; however, his identity as a "whistleblower" was revealed to Defendants.  This disclosure became the partial subject of a lawsuit brought by Plaintiff against ConAgra.[2]

In March, 2004, Plaintiff met with Defendants' general counsel and human resource director.  At the meeting, Defendants acknowledged ConAgra had identified Plaintiff as the whistleblower.  Plaintiff states that during the meeting, Defendants' representatives indicated that he was a valued employee, he need not worry about his job security, and that retaliation as a result of his whistleblowing would not be tolerated.

Upon termination, Plaintiff was informed his position was being eliminated as part of a reorganization/consolidation of the Company.  Plaintiff subsequently filed his complaint, alleging wrongful termination based on his age,[3] and his status as a "whistleblower" under

---

[1] According to the First Amended Complaint ("FAC"), Plaintiff reported the fraud to senior management, and this activity was eventually brought to the attention of the SEC. FAC at ¶¶ 8-9.  It does not specifically allege that Plaintiff informed the SEC.  However, in Plaintiff's Response to Defendants' Motion to Dismiss, Plaintiff states "[i]n the instant matter, Plaintiff reported fraudulent activities by ConAgra Foods to the SEC, a federal agency." Pl.'s Resp. to Def.'s Mot. to Dismiss, p. 5.

[2] No further information about this lawsuit is provided in the pleadings.

[3] Count I of Plaintiff's First Amended Complaint alleges age discrimination in violation of the ADEA, 29 U.S.C § 621 et seq.  Defendants do not seek dismissal of this Count.

various theories of recovery.

## II. STANDARD OF REVIEW

In reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court "must construe the complaint in the light most favorable to the plaintiff[], accept all well-pleaded factual allegations as true, and determine whether the plaintiff[] can prove no set of facts in support of [its] claims that would entitle [it] to relief." Goad v. Mitchell, 297 F.3d 497, 500 (6th Cir. 2002). Furthermore, "[a]lthough th[e] standard for Rule 12(b)(6) dismissals is quite liberal, the complaint must contain either direct or inferential allegations respecting the material elements and the allegations must constitute more than bare assertions of legal conclusions." Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003) (internal citations and quotations omitted).

## III. ANALYSIS

In their request for dismissal, Defendants argue that Plaintiff was at all times an at-will employee and that Plaintiff's allegations fail as a matter of law to establish that UAP representatives created an express or implied contract of "just cause" employment. Defendants additionally assert that Plaintiff's claim for wrongful discharge in violation of public policy is expressly preempted under Michigan law by the Michigan Whistleblowers' Protection Act ("WPA"), MICH. COMP. LAWS. ANN. § 15.361 et. seq. The Court addresses the merits of Defendants' arguments below.

### A. Promissory Estoppel and Breach of Contract

In Michigan the presumption is that employment for an indefinite term is employment at-will absent distinguishing features to the contrary. Dolan v. Cont'l Airlines/Cont'l

Express, 563 N.W.2d 23, 28 (Mich. 1997); Lytle v. Malady, 579 N.W.2d 906, 910 (Mich. 1998); Phillips v. Butterball Farms Co., 531 N.W.2d 144, 145-146 (Mich. 1995); Rood v. Gen. Dynamics Corp., 507 N.W.2d 591, 597 (Mich. 1993). Thus, employment relationships are "terminable at-will, with or without cause, 'at any time for any, or no reason.'" Vagts v. Perry Drug Stores, Inc., 516 N.W.2d 102, 103 (Mich. Ct. App. 1994) (quoting Suchodolski v. Michigan Consol. Gas Co., 327 N.W.2d 286, 287 (Mich. 1982)).

An employee can only overcome the presumption of at-will employment by proof of an express contract for a definite term or by a provision forbidding discharge without just cause. Bracco v. Michigan Technological Univ., 588 N.W.2d 467, 475 (Mich. Ct. App. 1998). A claimant may prove the existence of a "just cause" employment relationship by showing any of the following:

> (1) proof of a contractual provision for a definite term of employment, or a provision forbidding discharge absent just cause; (2) an express agreement, either written or oral, regarding job security that is clear and unequivocal; or (3) a contractual provision, implied at law, where an employer's policies and procedures instill a "legitimate expectation" of job security in the employee.

Lytle, 579 N.W.2d at 911.

Defendants maintain that during Plaintiff's employment with UAP from April 1982, until his termination in August 2004, Plaintiff was an at-will employee. Plaintiff signed employment agreements during his tenure in which he explicitly acknowledged he was employed on an at-will basis. On May 7, 1991, he signed an Employee Agreement with Loveland Industries, Inc., a subsidiary of UAP, under which he specifically agreed as follows:

> 1. My employment with the Company is or will be for no fixed term, and I reserve the right to terminate my employment with the Company at any time without cause

4

or notice. I understand that the Company reserves the right to terminate the employment relationship in the same manner.

Def.s' Mot. to Dismiss, ex. 1. On March 11, 1996, Plaintiff signed another Employee Agreement in which he agreed to the same terms outlined in the 1991 Employee Agreement. Id., ex. 2.

Plaintiff nevertheless claims his employment was terminable only for cause based upon oral statements made to him by Defendants' representatives. These statements, according to Plaintiff, were clear and concise representations regarding his continued job security with Defendants; he reasonably relied upon those representations and stated policy; and therefore expected to be terminated only for just cause. These representations include: "Plaintiff was a valued employee," and "Plaintiff need not worry about his job security in that Defendants would not tolerate any retaliation as a result of Plaintiff's 'whistle blowing' of fraud at UAP." FAC at ¶ 17.

These statements are insufficient as a matter of law to create an enforceable promise of, or contract for, "just cause" employment. In order for oral statements of job security to overcome the presumption of employment at-will, they must be clear and unequivocal. Rowe v. Montgomery Ward & Co., 473 N.W.2d 268, 275 (Mich. 1991). Additionally, there must be "objective evidence" that would "permit a reasonable [fact finder] to find that a reasonable promissee would interpret [those] statements and actions as a[n] [enforceable] promise." Id. at 274. The statements made to Plaintiff do not meet this standard.

In Lytle, the court found oral assurances made to the plaintiff that her job was secure and that she had potential for promotion were legally insufficient to create a contractual

obligation. 579 N.W.2d at 914. In the absence of specific statements, actual negotiation, or a showing of intent to contract for job security, the Lytle Court determined as a matter of law that such assurances could reasonably be interpreted only as non-contractual expressions of "optimistic hope." Id. Similarly, the statements made here are merely indicative of Defendants' intent to ensure Plaintiff was not subject to adverse action in violation of the law, not that he could not be fired absent just cause.

Additionally, courts generally require the employee to produce other evidence to substantiate a claim of "just cause" employment. For example, in Barnell v. Taubman, 512 N.W.2d 13, 17-18 (Mich. Ct. App. 1993), the court found an express contract was created in light of Plaintiff's pre-employment negotiations regarding job security, the fact that Plaintiff left a well-paid executive position and did not sign at-will employment acknowledgment, the absence of documents suggesting employment at-will, and the defendant's assurances to the plaintiff that he need not be concerned with summary dismissal. The statements here and circumstances surrounding Plaintiff's employment fail to rise to the level of clear and unequivocal, particularly in light of Plaintiff's written acknowledgment that he was employed at-will. Consequently, Plaintiff's reliance on these statements, without more, is unreasonable as a matter of law. Plaintiff had an at-will employment relationship with Defendants and was subject to termination without cause.

### B. Discharge Against Public Policy

The allegations in Count II of the First Amended Complaint assert a public policy exception to at-will employment. Despite the strong presumption that employment relationships are at-will, the courts have recognized a "public policy" exception to that settled doctrine in three circumstances. First, the exception has been applied where there

is an explicit legislative statement prohibiting the discharge, discipline or other adverse treatment of employees acting pursuant to a statutory right or duty, such as the WPA. Suchodolski v. Michigan Consol. Gas Co., 327 N.W.2d 286, 287 (Mich. 1982). Second, it has been applied when employees are subject to adverse treatment for refusing to violate a law in the course of their employment. Id. Finally, courts have applied the public policy exception to those situations where an employer retaliates against an employee for exercising a right conferred by a well-established legislative enactment. Id. Accord Pratt v. Brown Mach. Corp., 855 F.2d 1225, 1236 (6th Cir. 1988). At issue here is the applicability and impact of the first exception.

Plaintiff alleges that Defendants' duly appointed representatives made a direct representation to him that he would not be terminated, retaliated against, or harassed as a result of his "whistleblower" status. FAC at ¶ 35. Assuming for this motion, Plaintiff was discharged from employment based upon his "whistleblower" status, his only available remedy under Michigan law would be the WPA.

The WPA prohibits an employer from discharging or discriminating against an employee "because the employee . . . reports or is about to report . . . a violation . . . of a law or regulation or rule . . . to a public body. . . ." MICH. COMP. LAWS. § 15.362. Case law is clear: where an applicable statutory prohibition exists against discharging an employee in retaliation for some form of protected conduct, the WPA is the exclusive remedy for that individual, and any public policy claim is preempted. Dudewicz v. Norris-Schmid, 503 N.W.2d 645, 649 (Mich. 1993) (observing that in Michigan, "the remedies provided by statute for violation of a right having no common law counterpart are exclusive, not cumulative" and at common law, "there was no right to be free from being fired for reporting

an employer's violation of the law.") (quoting Covell v. Spengler, 366 N.W.2d 76, 80 (Mich. Ct. App. 1985)).  Therefore, Plaintiff could have sought relief pursuant to the WPA, and his claim alleging wrongful discharge in violation of public policy must be brought pursuant to that statute.

Plaintiff maintains that the facts of this case place it outside the Act.  He relies on the change in ownership of his employer and the status of the agency to which he reported the violation as grounds for allowing him to pursue his public policy claim.  The Court is not persuaded by Plaintiff's position.

First, Plaintiff argues that he could not maintain a cause of action under the WPA because the SEC's investigation of fraudulent activities was directed toward his former employer, ConAgra Foods, Inc.  His claim is that his discharge was due in large part to Defendant's knowledge of his status as a "whistleblower" at his former job.  The Court rejects Plaintiff's distinction.  The SEC's investigation into the fraud regarding certain financial and earning reports involved UAP, a wholly owned subsidiary of ConAgra.  See FAC at ¶¶ 6 - 9.  Plaintiff worked for UAP at the time of his report to senior management regarding the fraud and was subsequently fired by UAP even though it was then a wholly owned subsidiary of United Agri Products, Inc. rather than ConAgra. Michigan courts have not interpreted the WPA in the manner Plaintiff contemplates.  The courts construe its provisions so as to effectuate its purpose, which is protection of the public.  "Without employees who are willing to risk adverse employment consequences as a result of whistleblowing activities, the public would remain unaware of large-scale and potentially dangerous abuses."  Dolan, 563 N.W.2d at 26.  A change in ownership of his employer does not undermine the purpose of the Act.

Second, Plaintiff claims the WPA does not cover situations wherein an employee reports employer conduct to a federal agency as opposed to a state agency. See Driver v. Hanley, 575 N.W.2d 31, 35 (Mich. Ct. App. 1997). Here, Plaintiff reported ConAgra Foods' fraudulent activities to the SEC, a federal agency. Therefore, he concludes that his claim falls outside the purview of the WPA.

Plaintiff's position is undermined by the Michigan Supreme Court's decision in Dolan, 563 N.W.2d at 27, which recognized that a report to a federal agency can satisfy the Act. The court found the plaintiff stated a "valid claim of wrongful discharge from employment under the WPA where she alleged that she reported or was perceived to report a violation or suspected violation of the law" to the Drug Enforcement Agency, a federal agency. Id. at 25. Dolan mandates the Plaintiff's claim proceed under the WPA; however, Plaintiff's claim is barred. A claim under the WPA requires action within ninety days after the occurrence of an alleged violation. MICH. COMP. LAWS. § 15.363 (Any individual alleging a violation "may bring a civil action for appropriate injunctive relief, or actual damages, or both within 90 days after the occurrence of the alleged violation of this act."). Plaintiff's discharge occurred in August of 2004, more than ninety days before filing this lawsuit on November 28, 2005. The failure to meet the time limitations "bars an action under the Whistleblowers' Protection Act, regardless of the remedy requested." Covell, 366 N.W.2d at 79.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Counts II, III and IV of Plaintiff's First Amended Complaint for failure to state a claim under

Fed.R.Civ.P. 12(b)(6).  Plaintiff requested leave to amend in his responsive pleadings; however, for the reasons stated above, the Count finds that amendment would be futile.

**IT IS SO ORDERED**.


                                                  s/Marianne O. Battani
                                                     MARIANNE O. BATTANI
                                                 UNITED STATES DISTRICT JUDGE

Dated: August 17, 2006


## CERTIFICATE OF SERVICE

A copy of this Order was e-filed and/or mailed to counsel of record on this date.


                                                 s/Bernadette M. Thebolt
                                                      Deputy Clerk